SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Samuel Ryan** (A-65-20) (085165)

**Argued November 29, 2021 -- Decided February 7, 2022**

**SOLOMON, J., writing for the Court.**

In this appeal, the Court considers whether crimes committed by a defendant while under the age of eighteen may count as predicate offenses under the "Three Strikes Law," which mandates a sentence of life imprisonment without parole for a third-time offender.

At the age of sixteen, defendant committed two armed robberies within two days; he was convicted of two counts of first-degree robbery in 1990. In February 1996, less than three years after his release from prison, defendant committed two more armed robberies. Defendant was indicted separately for, and convicted of, each of the two 1996 robberies. Upon defendant's conviction for the second 1996 robbery, the State moved to sentence him to an extended term pursuant to the Three Strikes Law, predicated upon (1) his 1990 conviction, (2) his conviction for the first 1996 robbery, and (3) his conviction for the second 1996 robbery. The court sentenced defendant accordingly.

Defendant unsuccessfully appealed his convictions and sentence and thereafter filed eleven post-conviction release (PCR) petitions between 1999 and 2012. In 2018, defendant filed his twelfth PCR petition -- a motion to correct an illegal sentence -- relying on the United States Supreme Court's holding in Miller v. Alabama, 567 U.S. 460 (2012), that mandatory life-without-parole sentences for juvenile offenders are unconstitutional, and the Court's holding in State v. Zuber, 227 N.J. 422 (2017), that juveniles cannot be sentenced to the functional equivalent of life without parole. Defendant contended that his sentence was unconstitutional because his first strike occurred when he was a juvenile and the sentencing court did not consider the Miller factors before imposing a mandatory life sentence under the Three Strikes Law.

The trial court denied defendant's motion, and the Appellate Division affirmed. The Court granted certification. 246 N.J. 316 (2021).

**HELD:** The Three Strikes Law and the mandatory life-without-parole sentence imposed upon defendant under that statute do not violate the constitutional prohibition on cruel and unusual punishment. Further, Miller and Zuber have no application to adult defendants sentenced under the Three Strikes Law.

1

1.  When challenging the constitutionality of a sentencing statute, a defendant must overcome the strong presumption of constitutionality that attaches to any legislative enactment.  Where reasonable minds may differ regarding the constitutionality of a statute, courts defer to the will of the Legislature.  (pp. 11-12)

2.  Determining whether punishment is cruel and unusual under the Eighth Amendment of the United States Constitution and Article I, Paragraph 12 of the New Jersey Constitution requires the following three-part inquiry:  First, does the punishment for the crime conform with contemporary standards of decency?  Second, is the punishment grossly disproportionate to the offense?  Third, does the punishment go beyond what is necessary to accomplish any legitimate penological objective?  (pp. 12-13)

3.  Aimed at protecting the public from offenders who repeatedly commit serious offenses, the Three Strikes Law imposes a mandatory sentence of life without parole upon any person convicted on three separate occasions of certain violent crimes, including murder, manslaughter, aggravated assault, kidnapping, sexual assault, and robbery.  N.J.S.A. 2C:43-7.1(a).  The Court upheld the constitutionality of the Three Strikes Law in State v. Oliver, when -- in addition to rejecting challenges advanced under other constitutional provisions -- it made clear that the Three Strikes Law does not constitute cruel and unusual punishment.  162 N.J. 580, 585-89 (2000).  (pp. 13-15)

4.  In Miller, the United States Supreme Court held that mandatory life-without-parole sentences constitute cruel and unusual punishment when imposed on juvenile offenders but did not foreclose juveniles from being sentenced to life without parole.  567 U.S. at 465, 480.  Instead, the Court instructed sentencing courts to take into consideration the "hallmark features" of youth, the nature of the juvenile's environment, the effect of youthful "incompetencies" on the prosecution's outcome, and the "possibility of rehabilitation."  See id. at 477-78.  In Zuber, the Court extended application of the Miller factors to situations where a juvenile is facing a term of imprisonment that is the practical equivalent to life without parole.  227 N.J. at 429-30.  (pp. 16-17)

5.  Applying the three-part test here, the Court notes first that the Three Strikes Law continues to conform to contemporary standards of decency:  federal courts have overwhelmingly held that the Eighth Amendment does not prohibit counting juvenile offenses as strikes, and most states with three-strikes legislation count juvenile-age convictions as strikes where the defendant was waived up to adult court.  Second, an enhanced life-without-parole sentence is not grossly disproportionate where the offense is a dangerous and violent first-degree crime.  Most importantly, the punishment serves the legitimate penological objective of incapacitating serious third-time offenders.  The Three Strikes Law "was a response to a genuine legislative concern that repeat offenders pose a unique danger to society."  Oliver, 162 N.J. at 589.  (pp. 17-20)

2

6. The fact that the Legislature limited the definition of recidivists under the persistent offender statute, N.J.S.A. 2C:44-3(a), to defendants over the age of twenty-one who committed their three qualifying crimes after turning eighteen reinforces, rather than undermines, the Court's conclusion. N.J.S.A. 2C:44-3(a) illustrates plainly that the Legislature knows how to establish minimum ages for predicate offenses. It chose to do so in the persistent offender statute but did not include similar limits when it enacted the Three Strikes Law. It is the Legislature's prerogative to impose a requirement in one context but not another; courts must treat that distinction as meaningful. (pp. 21-23)

7. Nor do the holdings in Miller and Zuber change the outcome of the Court's constitutional analysis. Those cases are uniquely concerned with the sentencing of juvenile offenders to lifetime imprisonment or its functional equivalent without the possibility of parole. There is nothing in Miller or Zuber that precludes application of a recidivist statute such as the Three Strikes Law to an adult defendant. Indeed, as made clear in Oliver, the enhanced sentence under the Three Strikes Law is not imposed "'as either a new jeopardy or additional penalty for earlier crimes,' but instead as a 'stiffened penalty for the latest crime.'" 162 N.J. at 586. (pp. 23-24)

**AFFIRMED.**

**JUSTICE ALBIN, dissenting**, expresses the view that the use of Ryan's juvenile conviction as a predicate offense for the purpose of imposing a mandatory life sentence under the Three Strikes Law violates the cruel and unusual punishment provisions of the Federal and State Constitutions. Justice Albin states that the majority's decision in this case cannot be squared with the consolidated opinion in State v. Comer and State v. Zarate, in which the Court stressed that because "children are different from adults," the lengthy mandatory sentences imposed against Comer and Zarate for their juvenile murder convictions were cruel and unusual under the State Constitution. State v. Comer, ___ N.J. ___, ___ (2022) (slip op. at 4-6, 51). Justice Albin notes that, whereas Comer and Zarate are now eligible for release after serving twenty years, Ryan -- sentenced to a life term at age twenty-three -- must serve forty-seven years before he will be eligible for release, based on his juvenile conviction. In Justice Albin's view, giving Ryan's juvenile conviction the same constitutional weight as his adult convictions is at odds with the evolving standards of decency addressed in federal and state constitutional caselaw.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON and FERNANDEZ-VINA join in JUSTICE SOLOMON's opinion. JUSTICE ALBIN filed a dissent, in which JUSTICE PIERRE-LOUIS joins.**

3

SUPREME COURT OF NEW JERSEY
A-65 September Term 2020
085165

State of New Jersey,

Plaintiff-Respondent,

v.

Samuel Ryan,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| November 29, 2021 | February 7, 2022 |

James K. Smith, Jr., Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E. Krakora, Public
Defender, attorney; James K. Smith, Jr., of counsel and
on the briefs).

Daniel A. Finkelstein, Deputy Attorney General, argued
the cause for respondent (Andrew J. Bruck, Acting
Attorney General, attorney; Daniel A. Finkelstein, of
counsel and on the briefs).

Elana Wilf argued the cause for amici curiae the Rutgers
Criminal and Youth Justice Clinic and American Civil
Liberties Union of New Jersey (Rutgers University
School of Law – Newark Criminal and Youth Justice
Clinic and American Civil Liberties Union of New Jersey
Foundation, attorneys; Elana Wilf, Laura Cohen,
Alexander Shalom, and Jeanne LoCicero, of the brief).

1

Dillon J. McGuire argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Dillon J. McGuire, of counsel and on the brief, and CJ Griffin, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

In the winter of 1996, at the age of twenty-three, defendant Samuel Ryan robbed a Bridgeton, New Jersey gas station at gunpoint, stealing $100 and shooting a store clerk in the process. The offense resulted in defendant's third first-degree robbery conviction, and he was sentenced to life in prison without parole pursuant to the Persistent Offender Accountability Act, N.J.S.A. 2C:43-7.1(a), known as the "Three Strikes Law."

A "legislative reaction to . . . shocking murders by paroled offenders," the Three Strikes Law mandates a sentence of life imprisonment without parole for a third-time offender who had been convicted of certain serious and violent offenses on two prior occasions. State v. Oliver, 162 N.J. 580, 583 (2000). Defendant's three strikes included two first-degree armed robberies committed as a sixteen-year-old juvenile; he was waived to Superior Court[1]

---

[1] Defendant was waived to Superior Court pursuant to N.J.S.A. 2A:4A-26 (2014), which was repealed effective March 1, 2016, by L. 2015, c. 89, § 6. The replacement waiver statute, which remains current, raised the age of eligibility for waiver to fifteen years old, among other changes. See N.J.S.A. 2A:4A-26.1.

2

and prosecuted jointly for both crimes -- the first strike. After his release from prison, at the age of twenty-three, defendant committed two first-degree armed robberies -- the second and third strikes.[2]

In this appeal, defendant contends that the Three Strikes Law violates the prohibition against cruel and unusual punishment contained in the Eighth Amendment of the United States Constitution and Article I, Paragraph 12 of the New Jersey Constitution. He alleges that, by allowing courts to count crimes committed while under the age of eighteen as predicate offenses in sentencing defendants to mandatory life without parole, the Three Strikes Law ignores the constitutional constraints embodied in Miller v. Alabama, 567 U.S. 460 (2012), and State v. Zuber, 227 N.J. 422 (2017), which prohibit imposition of mandatory life-without-parole sentences or their functional equivalent on juvenile offenders.

Because defendant committed his third offense and received an enhanced sentence of life without parole as an adult, we hold that this appeal does not implicate Miller or Zuber. Accordingly, we affirm defendant's sentence and reaffirm the constitutionality of the Three Strikes Law.

---

[2] Because defendant's earlier armed robbery convictions count as a single strike, we refer to these offenses committed as an adult as defendant's second and third offenses or strikes for purposes of the Three Strikes Law.

3

I.

A.

We derive the following facts from the record of the court that sentenced defendant for his third strike.

At the age of sixteen, defendant committed two armed robberies within two days in November 1989. First, defendant and an accomplice robbed a gas station with a nine-millimeter semi-automatic pistol. Two days later, defendant and his accomplice committed another robbery at an apartment complex in Bridgeton, New Jersey with a .22-caliber rifle. Defendant was waived to Superior Court and prosecuted as an adult for both crimes concurrently; defendant pled guilty to two counts of first-degree robbery, N.J.S.A. 2C:15-1(a). The court found that defendant committed a first-degree Graves Act[3] offense and sentenced him to ten years' imprisonment with three and a third years of parole ineligibility.

Defendant was released on parole in May 1993. In February 1996, at the age of twenty-three, less than three years after his release from prison, defendant committed two more armed robberies. First, he and a co-defendant

---

[3] The Graves Act imposes mandatory prison sentences on defendants who commit crimes, such as robbery, while carrying a firearm, and requires extended mandatory terms for defendants who have committed more than one such offense. N.J.S.A. 2C:43-6(c).

stole cigarettes, food stamps, and $243 from a Wawa in Vineland, assaulting two employees in the process. Three weeks later, defendant, acting alone, committed another armed robbery at a Bridgeton gas station, where he stole $100 and shot a store clerk in the neck, fracturing his jaw. Defendant was indicted separately for each robbery.

Following trial on the Wawa robbery, a jury convicted defendant of first-degree robbery, N.J.S.A. 2C:15-1(a), among other charges. The trial court sentenced defendant to a sixty-year extended term under the Graves Act with twenty years of parole ineligibility.

Five months later, a jury convicted defendant of the gas station robbery. The State moved to sentence defendant to an extended term pursuant to the Three Strikes Law, predicated upon his 1990 conviction of two counts of first-degree robbery, his 1997 conviction of first-degree robbery, and the current conviction. Finding that defendant had committed three first-degree armed robberies and first-degree attempted murder, the sentencing judge granted the State's application for an extended term sentence and imposed concurrent mandatory life sentences without parole for the armed robbery and attempted murder convictions.

Defendant appealed his convictions and sentence. Defendant's arguments included that the mandatory sentence of life without parole imposed

5

under the Three Strikes Law constituted cruel and unusual punishment. The Appellate Division affirmed defendant's convictions and life sentences without parole, noting that it had already found the Three Strikes Law to be constitutional.[4] We denied defendant's petition for certification.

Defendant thereafter filed eleven post-conviction relief (PCR) petitions between 1999 and 2012. None were successful, and defendant remained incarcerated.

B.

In 2018, defendant filed his twelfth PCR petition -- a motion to correct an illegal sentence -- relying on the United States Supreme Court's holding in Miller v. Alabama, 567 U.S. 460, that mandatory life-without-parole sentences for juvenile offenders are unconstitutional, and this Court's holding in State v. Zuber, 227 N.J. 422, that juveniles cannot be sentenced to the functional equivalent of life without parole. Defendant contended that his sentence was unconstitutional because his first strike occurred when he was a juvenile and the sentencing court did not consider the Miller factors[5] before imposing a mandatory life sentence under the Three Strikes Law.

---

[4] This Court affirmed the statute's constitutionality the following year in Oliver, 162 N.J. 580.

[5] Miller, 567 U.S. at 477-78.

6

The trial court denied defendant's motion, finding that because defendant received his enhanced life sentence as an adult, Miller and Zuber did not apply. The court explained that defendant's conviction while a juvenile counted as a conviction in adult court for a first-degree Graves Act offense -- a first strike. Miller and Zuber, the court further reasoned, are intended to offer incarcerated juveniles a meaningful opportunity to re-enter society upon rehabilitation, but defendant already had that opportunity and chose to return to his violent behaviors as an adult. The court therefore held that defendant properly received an enhanced sentence under the Three Strikes Law.

The Appellate Division affirmed, adopting the trial court's reasoning that defendant received his mandatory life sentence as an adult and that Miller and Zuber were therefore inapposite. The court further noted that defendant had his opportunity to re-enter society when he was released from prison in 1993, but instead continued to commit even more violent crimes.

This Court granted defendant's petition for certification to consider whether a defendant's prior juvenile-age conviction counts as a predicate offense under the Three Strikes Law. 246 N.J. 316 (2021). We then granted leave to participate as amici curiae to the Association of Criminal Defense Lawyers of New Jersey (ACDL) and to the Rutgers Criminal and Youth Justice

Clinic and the American Civil Liberties Union of New Jersey, participating jointly (collectively, Rutgers Clinic).

## II.

Defendant contends that allowing sentencing courts to count juvenile offenses as strikes when imposing on defendants mandatory life-without-parole sentences violates both the Eighth Amendment of the United States Constitution, and Article I, Paragraph 12 of the New Jersey Constitution. He argues that juvenile-age convictions are not the same as convictions for offenses committed as an adult and therefore cannot be considered under the Three Strikes Law because juveniles are less culpable and less deserving of such severe punishment than adults. Defendant notes that, in sentencing him to life without parole, the court did not apply the Miller factors to his first strike or consider how young he was at the time of the offense. He argues that the Three Strikes Law's mandatory minimum sentence of life without parole precludes judges from considering youth as a mitigating factor at sentencing and denies the offender a meaningful opportunity to obtain release based upon demonstrated maturity and rehabilitation.

Defendant also highlights that the Three Strikes Law contains no language limiting its application to juvenile offenders and contends that sentencing courts could conceivably impose mandatory life-without-parole

8

sentences even when all three offenses were committed while a juvenile. Finally, defendant argues that because the "persistent offender" statute, N.J.S.A. 2C:44-3(a), defines recidivists as defendants over the age of twenty-one who committed three first-, second-, or third-degree qualifying crimes after turning eighteen, the Legislature could not reasonably have intended to include offenses committed as a juvenile under the Three Strikes Law.

Amici advance substantially the same constitutional arguments as defendant. The ACDL also contends that notions of fundamental fairness preclude counting prior juvenile convictions as predicate offenses under the Three Strikes Law. The Rutgers Clinic extends defendant's argument further, asserting that this Court should not count any offenses committed before a defendant reaches the age of twenty-six as strikes under the Three Strikes Law.

The State counters that defendant has not met his burden in proving the Three Strikes Law unconstitutional and that his sentence should therefore be affirmed. Noting that the Legislature enacted the statute as a response to heinous crimes committed by recidivist offenders, the State asserts that, in declining to differentiate between juvenile and adult offenses, the Legislature intended that juvenile offenses be considered in the same way as adult offenses under the Three Strikes Law. The State reasons that juvenile offenses are considered at sentencing as evidence of a likelihood to reoffend, citing

9

N.J.S.A. 2C:44-1(a)(6) and case law. More importantly, the State emphasizes that offenders like defendant, who commit violent crimes as adults despite having served time in prison, are no longer juveniles when they are sentenced under the Three Strikes Law, making Miller and Zuber inapplicable. Accordingly, the State insists that life without parole is a constitutional sentence considering defendant's propensity to reoffend.

The State further notes that other courts, including eight United States Courts of Appeals, have held that juvenile offenses can be considered under recidivist statutes like the Three Strikes Law. The State refutes defendant's contention that the "persistent offender" statute is inconsistent with allowing consideration of juvenile-age offenses under the Three Strikes Law, arguing that the Legislature reasonably determined that the dangerous nature of first-degree crimes covered by the Three Strikes Law requires that offenders who committed a qualifying offense while a juvenile nevertheless should be incapacitated for life.

III.

A.

Defendant's PCR petition claims that his sentence imposed under the Three Strikes Law is illegal. Ordinarily a defendant must file a PCR petition within the time prescribed by Rule 3:22-12, but a defendant may challenge an

10

illegal sentence at any time as provided by Rule 3:21-10(b)(5).  "An 'illegal sentence' is one 'not imposed in accordance with the law,'" including a sentence that violates a constitutional safeguard.  Zuber, 227 N.J. at 437 (quoting State v. Acevedo, 205 N.J. 40, 45 (2011)).  We begin our discussion here by reviewing the applicable standards of review when considering a defendant's motion to correct an illegal sentence.

When challenging the constitutionality of a sentencing statute, a defendant must overcome "[t]he strong presumption of constitutionality that attaches" to any legislative enactment.  State v. Buckner, 223 N.J. 1, 14 (2015) (alteration in original) (quoting Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 285 (1998)).  "The foundation for that presumption is solid and clear: the challenged law 'represents the considered action of a body composed of popularly elected representatives'" and is entitled to judicial deference.  Ibid. (quoting N.J. Sports & Exposition Auth. v. McCrane, 61 N.J. 1, 8 (1972)).  To overcome the strong presumption of validity, the defendant must demonstrate that the statute's "repugnancy to the constitution is clear beyond reasonable doubt."  Ibid. (quoting Gangemi v. Berry, 25 N.J. 1, 10 (1957)).  Where reasonable minds may differ regarding the constitutionality of a statute, we will defer to the will of the Legislature.  Id. at 15.  We must be mindful of such deference while considering the Three Strikes Law in the context of the Eighth

11

Amendment of the United States Constitution and Article I, Paragraph 12 of the New Jersey Constitution.

B.

The ban on excessive punishment "flows from the basic precept of justice that punishment for crime should be graduated and proportioned to the offense." Zuber, 227 N.J. at 437 (internal quotation marks omitted) (quoting Roper v. Simmons, 543 U.S. 551, 560 (2005)). The test to determine whether punishment is cruel and unusual under the Eighth Amendment of the United States Constitution and Article I, Paragraph 12 of the New Jersey Constitution is "generally the same." Id. at 438 (quoting State v. Ramseur, 106 N.J. 123, 169 (1987)). Both the Federal and State Constitutions require the following three-part inquiry:

> First, does the punishment for the crime conform with contemporary standards of decency? Second, is the punishment grossly disproportionate to the offense? Third, does the punishment go beyond what is necessary to accomplish any legitimate penological objective?
>
> [Ibid. (quoting Ramseur, 106 N.J. at 169).]

In assessing the first prong, courts look to the legislative enactments of their own state and other states as the best markers of contemporary standards of decency. See Roper, 543 U.S. at 564-68. For the second prong, courts weigh "the culpability of the offenders at issue in light of their crimes and

12

characteristics, along with the severity of the punishment in question."

Graham v. Florida, 560 U.S. 48, 67 (2010). Finally, for the third prong, courts consider whether the punishment adequately fulfills the traditional penological goals of retribution, deterrence, incapacitation, and rehabilitation. Id. at 72-74. Application of this three-factor test to the present appeal governs whether New Jersey's Three Strikes Law is constitutional as applied to defendant and others for whom one or more of the three requisite "strikes" relates to a juvenile offense.

C.

Inspired by federal three-strikes legislation, our Legislature passed its own three-strikes law in 1995. See Oliver, 162 N.J. at 583 (noting that the Legislature passed the Persistent Offender Accountability Act, L. 1995, c. 126, § 2 (codified at N.J.S.A. 2C:43-7.1(a)), after the federal Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994)). Aimed at protecting the public from offenders who repeatedly commit serious offenses, the Three Strikes Law imposes a mandatory sentence of life without parole upon any person convicted on three separate occasions of certain violent crimes, including murder, manslaughter, aggravated assault, kidnapping, sexual assault, and robbery. N.J.S.A. 2C:43-7.1(a). The statute provides that

13

[a] person convicted of a crime under any of the following: N.J.S.A. 2C:11-3; subsection a. of N.J.S.A. 2C:11-4; a crime of the first degree under N.J.S.A. 2C:13-1, paragraphs (3) through (6) of subsection a. of N.J.S.A. 2C:14-2; N.J.S.A. 2C:15-1; or section 1 of L. 1993, c. 221 ([N.J.S.A.] 2C:15-2), who has been convicted of two or more crimes that were committed on prior and separate occasions, regardless of the dates of the convictions, under any of the foregoing sections or under any similar statute of the United States, this State, or any other state for a crime that is substantially equivalent to a crime under any of the foregoing sections, shall be sentenced to a term of life imprisonment by the court, with no eligibility for parole.

[Ibid.]

This Court upheld the constitutionality of the Three Strikes Law more than twenty years ago in State v. Oliver, 162 N.J. at 585-88. In that case, we first determined that the law does not violate the double jeopardy clause of the State and Federal Constitutions because the enhanced sentence is not imposed "'as either a new jeopardy or additional penalty for earlier crimes,' but instead as a 'stiffened penalty for the latest crime, which was considered to be an aggravated offense because it is a repetitive one.'" Id. at 586 (quoting Witte v. United States, 515 U.S. 389, 400 (1995)). We also concluded that the statute did not offend separation of powers by "impermissibly increas[ing] the discretionary power of prosecutors while stripping the judiciary of all discretion to craft sentences," noting that the Legislature's "'power to preclude

14

judicial suspension of sentences'" is inherent in the "'power to enact mandatory sentencing laws in the first place.'" Id. at 586-87 (quoting State v. Des Marets, 92 N.J. 62, 80-81 (1983)). We likewise rejected arguments that the Law violates the Ex Post Facto and Equal Protection Clauses. Id. at 587, 589-92.

Most importantly for present purposes, our holding in Oliver made clear that the Three Strikes Law does not constitute cruel and unusual punishment. Id. at 588-89. Applying the required "three-part inquiry," we first found that the statute comports with contemporary standards of decency, as the federal government and at least twenty-four other jurisdictions had enacted similar legislation. Id. at 588. We further determined that the enhanced life-without-parole sentence is not grossly disproportionate where the offense is a dangerous first-degree crime. Id. at 588-89. Finally, we concluded that the enhanced sentence was necessary to fulfill the traditional penological objective of incapacitating recidivist offenders, who pose a particular danger to society. Id. at 589. Whether the same result is compelled when one of the three qualifying offenses was committed when the defendant was a juvenile requires review of the federal and state constitutional protections embodied in Miller and Zuber, and their application to this appeal.

D.

In <u>Miller</u>, the United States Supreme Court held that mandatory life-without-parole sentences constitute cruel and unusual punishment when imposed on juvenile offenders. 567 U.S. at 465. Although the U.S. Supreme Court stressed that sentencing courts must consider "how children are different, and how those differences counsel against irrevocably sentencing them to lifetime in prison," it did not foreclose juveniles from being sentenced to life without parole. <u>Id.</u> at 480. Instead, the Court instructed sentencing courts to take into consideration the "hallmark features" of youth, the nature of the juvenile's environment, the effect of youthful "incompetencies" on the prosecution's outcome, and the "possibility of rehabilitation":

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features -- among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him -- and from which he cannot usually extricate himself -- no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth -- for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the

16

> possibility of rehabilitation even when the circumstances most suggest it.
>
> [Id. at 477-78 (citations omitted).]

In Zuber, we built upon this federal juvenile sentencing jurisprudence and extended application of the Miller factors to situations where a juvenile is facing a term of imprisonment that is the practical equivalent to life without parole. 227 N.J. at 429-30. In doing so, we acknowledged that "Miller's concerns apply broadly: to cases in which a defendant commits multiple offenses during a single criminal episode; to cases in which a defendant commits multiple offenses on different occasions; and to homicide and non-homicide cases." Id. at 448. We did not, however, extend Miller's protections to defendants sentenced for crimes committed when those defendants were over the age of eighteen.

IV.

A.

Defendant asserts that the constitutional protections against cruel and unusual punishment bar application of the Three Strikes Law to any individual who committed at least one of the predicate offenses as a juvenile. Nevertheless, application of the three-factor test for cruel and unusual punishment utilized in Miller and Zuber to the Three Strikes Law leads us to the same conclusion today as it did over twenty years ago in Oliver, 162 N.J.

17

580. The Three Strikes Law and its application to defendant are both constitutionally permissible.

First, a survey of other jurisdictions demonstrates that the Three Strikes Law continues to conform to contemporary standards of decency. Federal Courts of Appeals have overwhelmingly held that the Eighth Amendment does not prohibit counting juvenile offenses as strikes. See, e.g., United States v. Hunter, 735 F.3d 172, 174-76 (4th Cir. 2013); United States v. Graham, 622 F.3d 445, 461-64 (6th Cir. 2010); United States v. Salahuddin, 509 F.3d 858, 863-64 (7th Cir. 2007); United States v. Scott, 610 F.3d 1009, 1018 (8th Cir. 2010); United States v. Edwards, 734 F.3d 850, 851, 853 (9th Cir. 2013); United States v. Orona, 724 F.3d 1297, 1307-08 (10th Cir. 2013); United States v. Hoffman, 710 F.3d 1228, 1233 (11th Cir. 2013).

And most states with similar three-strikes legislation count juvenile-age convictions as strikes where the defendant was waived up to adult court. See, e.g., Wilson v. State, 521 S.W.3d 123, 128 (Ark. 2017); Vickers v. State, 117 A.3d 516, 519-20 (Del. 2015); State v. Standard, 569 S.E.2d 325, 326, 328-29 (S.C. 2002); State v. Teas, 447 P.3d 606, 619-20 (Wash. Ct. App. 2019), review denied, 460 P.3d 182 (Wash. 2020); Commonwealth v. Lawson, 90 A.3d 1, 6-8 (Pa. Super. Ct. 2014). Cf. Tenn. Code Ann. § 40-35-120(e)(3)

18

(providing that juvenile-age convictions in adult court count as predicate offenses so long as the conviction resulted in a custodial sentence).[6]

Second, an enhanced life-without-parole sentence is not grossly disproportionate where the offense is a dangerous and violent first-degree crime, such as armed robbery or attempted murder, the offenses for which defendant here received his final strike.[7] Furthermore, as we noted in Oliver, repeat offenders are already subject to mandatory enhanced sentences under other statutes like the Habitual Offender Act and the Graves Act. See 162 N.J. at 588-89. This consistent application of extended terms reflects a legislative determination that such lengthy sentences are proportionate to the offenses covered by these statutes.

Lastly and most importantly, the punishment serves the legitimate penological objective of incapacitating serious third-time offenders. The

---

[6] We note that those states that have chosen to limit application of their recidivist statutes to individuals who committed their first qualifying offense when over the age of eighteen have all done so through the legislative process. See, e.g., Ky. Rev. Stat. Ann. 532.080(2), (3); N.M. Stat. Ann. § 31-18-23(C); N.D. Cent. Code § 12.1-32-09(1)(c); Wyo. Stat. Ann. § 6-10-201(b)(ii). Whether to amend our law in that way is for the Legislature to determine.

[7] Despite our dissenting colleague's insistence to the contrary, State v. Laurick, 120 N.J. 1 (1990), is not an "apt comparison" for analyzing the grossly disproportionate factor or any other issue in this case. See post at ___ (slip op. at 12). Our decision in Laurick is predicated on the Sixth Amendment right to counsel, not the Eighth Amendment's bar on cruel and unusual punishment.

Three Strikes Law "was a response to a genuine legislative concern that repeat offenders pose a unique danger to society," as rehabilitative efforts have failed those defendants. <u>Oliver</u>, 162 N.J. at 589. Accordingly, the Legislature determined that an enhanced sentence of life without parole is necessary to protect the public from the most dangerous persistent offenders.

Here, defendant received his enhanced sentence on his third armed robbery conviction, having already served three and a third years of a ten-year prison sentence for his first offense, committed at the age of sixteen. Defendant was not only undeterred by incarceration, but his crimes committed after release from state prison grew increasingly violent: defendant assaulted two Wawa employees during the commission of his first post-release offense and then, before his arrest, shot a store clerk during his final robbery.

In sum, defendant's sentence accords with all elements of the three-part test and therefore does not constitute cruel and unusual punishment within the meaning of the Federal or State Constitution.[8]

---

[8] Again, defendant challenged his sentence on the sole basis that he committed the first predicate offense while he was a juvenile. Our finding that the Three Strikes Law is valid on its face leaves open the possibility for relief via specific as-applied challenges in other cases that present unusual circumstances.

20

B.

Nor do defendant and amici's arguments regarding legislative intent, the requirements of Miller and Zuber, or other constitutional principles militate in favor of vacating defendant's sentence.

Defendant attributes significance to the fact that the Legislature limited the definition of recidivists under the persistent offender statute, N.J.S.A. 2C:44-3(a), to defendants over the age of twenty-one who committed their three qualifying crimes after turning eighteen. He contends that this definition shows the Legislature could not have intended to allow juvenile-age offenses to be considered under the Three Strikes Law.

This argument is unavailing. The statute to which defendant points illustrates plainly that the Legislature knows how to establish minimum ages for predicate offenses. It chose to do so in the persistent offender statute, which was enacted in 1978 and has been amended on numerous occasions since then without alteration to the age requirement. See N.J.S.A. 2C:44-3(a).[9] Yet, despite its attention to the age limits for predicate offenses in the

---

[9] In 1979, the Legislature revealed its attentiveness to the statute's age requirements when it amended N.J.S.A. 2C:44-3(a) "to clarify that the defendant must be 21 at the time of the commission of the crime for which he is to be judged a persistent offender" rather than the date he is sentenced. S. Judiciary Comm. Statement to S. 3202 9-10 (June 18, 1979); see L. 1979, c. 178, § 95.

21

persistent offender statute, the Legislature did not include similar limits when it enacted the Three Strikes Law in 1995. See L. 1995, c. 126, § 2. Nor did it impose such limits when it modified the Three Strikes Law in 2003 to clarify that the strikes are established by date of the offense, not the date of the conviction, see L. 2003, c. 48, § 1, even though, by then, the statute had been applied for eight years without regard to the age at which the first or second strikes were committed.

It is the Legislature's prerogative to impose a requirement in one context but not another; it is our duty to treat that distinction as meaningful. See, e.g., In re Registrant H.D., 241 N.J. 412, 423 (2020) ("The PSL provisions demonstrate that the Legislature knows how to tie Megan's Law requirements to non-Megan's Law offenses when it chooses; it did not choose to do so in subsection (f)."). The persistent offender statute notably encompasses a wider range of graded offenses -- first-, second-, and third-degree qualifying crimes -- than the Three Strikes Law, which is limited to certain first-degree violent offenses. The difference in application of the two statutes reflects a deliberate choice by the Legislature to further designate those offenses covered under the Three Strikes Law as especially egregious and requiring the defendant's incapacitation -- even where one of the predicate offenses was committed by a juvenile. This Court will "neither rewrite a plainly written enactment of the

22

Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language."[10] State v. J.V., 242 N.J. 432, 443 (2020) (alteration omitted) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

Defendant also contends that, by counting juvenile-age crimes as predicate offenses, the Three Strikes Law deprives the offender of a meaningful opportunity to rehabilitate and reenter society as contemplated by Miller and Zuber. Defendant insists therefore that Miller and Zuber must necessarily change the outcome of our constitutional analysis. We disagree.

Miller and Zuber are intended to afford juveniles an opportunity for rehabilitation and ultimate release from incarceration. See Miller, 567 U.S. at 479 (finding that "children's . . . heightened capacity for change" necessarily limits the "appropriate occasions for sentencing juveniles to" life without parole); Zuber, 227 N.J. at 451 (noting that "it is difficult at an early age to differentiate between the immature offender who may reform and the juvenile

---

[10] Because we will not rewrite the plain language of a legislative enactment, we likewise dismiss the Rutgers Clinic's contention that offenses should not count as strikes under the Three Strikes Law until a defendant reaches the age of twenty-six. The Legislature has chosen eighteen as the threshold age for adulthood in criminal sentencing. Although this choice may seem arbitrary, "a line must be drawn," and "[t]he age of [eighteen] is the point where society draws the line for many purposes between childhood and adulthood." Roper, 543 U.S. at 574.

who is irreparably corrupt"). Thus, <u>Miller</u> and <u>Zuber</u> are uniquely concerned with the sentencing of juvenile offenders to lifetime imprisonment or its functional equivalent without the possibility of parole.

Defendant committed his second and third armed robberies as a twenty-three year old, and was therefore an adult being sentenced for a crime committed as an adult. There is nothing in <u>Miller</u> or <u>Zuber</u> that precludes application of a recidivist statute such as the Three Strikes Law to an adult defendant who meets the carefully considered statutory requirements set by the Legislature. Indeed, as we made clear in <u>Oliver</u>, the enhanced sentence under the Three Strikes Law is not imposed "'as either a new jeopardy or additional penalty for earlier crimes,' but instead as a 'stiffened penalty for the latest crime.'" 162 N.J. at 586 (quoting <u>Witte</u>, 515 U.S. at 400). The Three Strikes Law thus applies to those offenders who "have forfeited the opportunity to attempt rehabilitation, having failed repeatedly to desist from serious criminal conduct." <u>State v. Galiano</u>, 349 N.J. Super. 157, 165 (App. Div. 2002). As an adult who committed a third armed robbery, defendant satisfied the statutory preconditions of the Three Strikes Law and was sentenced accordingly.

Finally, we reject the ACDL's argument that constitutional principles of fundamental fairness preclude juvenile convictions from being counted as predicate offenses under the Three Strikes Law. The fundamental fairness

24

doctrine "serves to protect citizens generally against unjust and arbitrary governmental action" where there is otherwise "no explicit statutory or constitutional protection to be invoked." State v. Njango, 247 N.J. 533, 548-49 (2021) (quoting Doe v. Poritz, 142 N.J. 1, 108-09 (1995)). We apply the doctrine "sparingly and only where the interests involved are especially compelling." Id. at 549 (internal quotation marks omitted) (quoting State v. Saavedra, 222 N.J. 39, 67 (2015)). We do not find the Legislature's policy decision to count qualifying juvenile-age crimes as strikes to be fundamentally unfair because, as already explained, the enhanced life-without-parole sentence is imposed only upon commission of a third, violent first-degree crime as an adult.

We therefore hold that the Three Strikes Law and the mandatory life-without-parole sentence imposed upon defendant under that statute do not violate the constitutional prohibition on cruel and unusual punishment. We further hold that Miller and Zuber have no application to adult defendants sentenced under the Three Strikes Law. Accordingly, we affirm defendant's sentence.

V.

For the reasons expressed, we affirm the judgment of the Appellate Division.

25

CHIEF JUSTICE RABNER and JUSTICES PATTERSON and FERNANDEZ-VINA join in JUSTICE SOLOMON's opinion.  JUSTICE ALBIN filed a dissent, in which JUSTICE PIERRE-LOUIS joins.

State of New Jersey,

Plaintiff-Respondent,

v.

Samuel Ryan,

Defendant-Appellant.

JUSTICE ALBIN, dissenting.

Today, under New Jersey's Three Strikes Law, the majority upholds Samuel Ryan's mandatory term of life imprisonment imposed on account of a robbery he committed when he was sixteen years old. The Three Strikes Law makes that "juvenile" robbery conviction a predicate crime (the first strike) -- along with the two crimes Ryan committed three weeks apart when he was twenty-three years old (the two other strikes) -- authorizing the mandatory life without parole sentence. See N.J.S.A. 2C:43-7.1(a).[1] The majority finds that the use of Ryan's juvenile conviction to justify the life term does not violate our federal and state prohibitions against cruel and unusual punishment.

---

[1] A juvenile conviction in this opinion refers to any conviction in which a defendant under the age of eighteen committed a criminal offense and was waived up to adult court for prosecution.

1

That finding, however, can hardly be squared with this Court's consolidated opinion in State v. Comer and State v. Zarate, issued just one month ago. In those cases, we stated that "children are different from adults" because they "lack maturity, can be impetuous, are more susceptible to pressure from others, and often fail to appreciate the long-term consequences of their actions." State v. Comer, ___ N.J. ___, ___ (2022) (slip op. at 4) (citing Miller v. Alabama, 567 U.S. 460, 477 (2012)). Those distinguishing factors of youth, among others, led this Court to hold that the lengthy mandatory sentences imposed against Comer and Zarate for their juvenile murder convictions were cruel and unusual under Article I, Paragraph 12 of our State Constitution. Id. at ___ (slip op. at 5-6, 51). Comer and Zarate -- and similarly situated juveniles -- are therefore eligible for release after serving twenty years, at which time the court will assess whether they are rehabilitated and fit to reenter society. See id. at ___ (slip op. at 51).

On the other hand, Ryan must serve forty-seven years before he will be eligible for release, based on his juvenile conviction. He will be seventy years old at that time.[2] He will have been warehoused in a prison for nearly five

_____

[2] A defendant convicted under the Three Strikes Law "shall be sentenced to a term of life imprisonment by the court, with no eligibility for parole." N.J.S.A. 2C:43-7.1(a). Although sentenced to life imprisonment, "a defendant who is at least 70 years of age and who has served at least 35 years in prison

2

decades, even if he had been totally rehabilitated and fit to reenter society decades earlier.

Comer and Zarate established that culpability for juvenile crimes and adult crimes cannot be weighed on the same scale because of the distinguishing characteristics of youth, such as immaturity and impetuosity, and because the juvenile brain is not fully developed. Id. at ___ (slip op. at 45, 49). On that basis, giving Ryan's juvenile conviction the same constitutional weight as his adult convictions under the Three Strikes Law is at odds with the evolving standards of decency addressed in our federal and state constitutional caselaw. See id. at ___ (slip op. at 41); see also, e.g., Miller, 567 U.S. at 469-71; Graham v. Florida, 560 U.S. 48, 58, 67 (2010).

No one disputes that Ryan has committed serious crimes warranting punishment and a lengthy sentence. But a law that mechanically imposes a grossly disproportionate sentence, a law that strips a court from considering the incapacitating element of youth, and a law that denies the court all discretion in fashioning a sentence based on a youthful conviction cannot be

---

. . . shall be released on parole if the full Parole Board determines that the defendant is not a danger to the safety of any other person or the community." N.J.S.A. 2C:43-7.1(e).

3

reconciled with our federal or state constitutional jurisprudence.  Cf. Jones v. Mississippi, 593 U.S. ___, 141 S. Ct. 1307, 1311 (2021).

No law is superior to the Constitution.  In Ryan's case, and other similar cases, the Three Strikes Law must comport with the dictates of the federal and state constitutional prohibitions against cruel and unusual punishment.  In my view, under the Eighth Amendment and Article I, Paragraph 12 of our State Constitution, judges cannot be denied discretion in determining whether a juvenile conviction can be the basis for a predicate offense under the Three Strikes Law for the purpose of sentencing a twenty-three-year-old to a lifetime of imprisonment.  Additionally, I would hold that our State Constitution bars a juvenile conviction from serving as a predicate offense under the Three Strikes Law.

The majority's decision does not end the debate.  The Legislature has the power to conform the Three Strikes Law to its conception of the evolving standards of decency of a mature society -- and to bring consistency to its legislative scheme in the Code of Criminal Justice.

I would find that Ryan's juvenile conviction cannot be considered a predicate offense for the purpose of imposing a mandatory life sentence under the Three Strikes Law but may be considered in setting Ryan's overall sentence for the crimes he committed when he was twenty-three years old.

4

I.

In 1996, twenty-three-year-old Samuel Ryan committed serious first-degree crimes within three weeks of each other. If convicted only of those crimes, the court would have had discretion to sentence Ryan to prison for many decades. But because the Three Strikes Law designated a juvenile conviction as a predicate offense, the court was compelled to impose a mandatory life sentence.

The Three Strikes Law provides that a defendant "convicted of two or more [violent crimes enumerated in the statute] that were committed on prior and separate occasions, regardless of the dates of the convictions . . . shall be sentenced to a term of life imprisonment by the court, with no eligibility for parole." N.J.S.A. 2C:43-7.1(a). The statute does not specifically exempt crimes committed by a juvenile defendant.

In 1989, Ryan pled guilty to two first-degree robberies, after he was denied the rehabilitative services of the juvenile court system and waived up to adult court. At the sentencing hearing, in a cry for help, his mother explained that her sixteen-year-old son was a troubled youth. She stated:

> For years I've been trying to give Sammy some kind of mental help that's been ordered numerous times. It's never been given, and I don't believe his mental state ever has been what it should be. I know that he has a mental problem . . . . I'm not a doctor and I don't have the means to hire a private psychiatrist to see my

5

son . . . . I don't know what else to do but I know my son and I know he's not all that bad. I know he's been easily to be led, but a lot of these things that he has done I don't believe he can help himself. He has the mind, the willingness to do right, but a lot of times he doesn't even know why he does things himself.

After balancing the aggravating and mitigating factors, the court sentenced Ryan to a ten-year prison term, subject to a three-year-and-four-month period of parole ineligibility. Three years after his release from prison, Ryan committed the crimes that constituted his second and third strikes under the Three Strikes Law. In 1997, Ryan was sentenced to life without parole based on the first strike -- the crime he committed at age sixteen.

## II.

The United States and New Jersey Constitutions bar cruel and unusual punishment. U.S. Const. amend. VIII; N.J. Const. art. I, ¶ 12. Under both Constitutions, three questions are considered in determining whether a punishment is cruel and unusual: (1) "does the punishment for the crime conform with contemporary standards of decency?"; (2) "is the punishment grossly disproportionate to the offense?"; and (3) "does the punishment go beyond what is necessary to accomplish any legitimate penological objective?" State v. Zuber, 227 N.J. 422, 438 (2017) (quoting State v. Ramseur, 106 N.J. 123, 169 (1987)); accord Graham, 560 U.S. at 67-68. By that measure, the use

of Ryan's juvenile offense as a predicate for imposing a mandatory life sentence without parole contravenes both our Federal and State Constitutions.

## A.

First, in my view, the imposition of a mandatory life sentence based on a predicate juvenile conviction does not "conform with contemporary standards of decency." Judicial decisions and recent legislative enactments are the "clearest and most reliable objective evidence of contemporary values." Cf. Atkins v. Virginia, 536 U.S. 304, 312 (2002) (quoting Penry v. Lynaugh, 492 U.S. 302, 331 (1989)). Our Court has acknowledged "time and again" that "children are different." Comer, ___ N.J. at ___ (slip op. at 41).

The United States Supreme Court and our Court recognize what social science has long understood: "children lack maturity and responsibility, which can lead to 'ill-considered actions'"; "they 'are more vulnerable to negative influences and outside pressures'"; "their character 'is not as well formed' as an adult's"; and "their misconduct is not as morally culpable as an adult's." Id. at ___ (slip op. at 45) (citing Roper v. Simmons, 543 U.S. 551, 569-70 (2005)). Science has taught us "that 'parts of the brain involved in behavior control continue to mature through late adolescence,' accounting for one of the 'fundamental differences between juvenile and adult minds.'" State in Interest of C.K., 233 N.J. 44, 69 (2018) (quoting Graham, 560 U.S. at 68).

7

Our evolving jurisprudence has grown increasingly skeptical about the constitutionality of lengthy sentences or permanent disabilities based on youthful offenses.  See id. at 68-70.  Just one month ago, this Court held that sentencing a juvenile to a mandatory thirty-year prison term without parole eligibility for a murder conviction under N.J.S.A. 2C:11-3(b)(1) constituted cruel and unusual punishment and thus violated Article I, Paragraph 12 of our State Constitution.  See Comer, ___ N.J. at ___ (slip op. at 5-6).  As a constitutional remedy, this Court now affords juveniles convicted of murder the opportunity of judicial review of their sentences after serving twenty years of imprisonment -- the opportunity of establishing their rehabilitation and their ability to reenter society as productive members.  Id. at ___ (slip op. at 6-7).  Yet, under the majority's decision here, Ryan, who was sentenced at the age of twenty-three for non-homicide offenses, must serve a minimum of forty-seven years in prison based on a predicate juvenile conviction under the Three Strikes Law.

Recent legislation has reinforced the notion that youth must play a discretionary role in the imposition of sentences.  In 2020, the Legislature amended the New Jersey Code of Criminal Justice to include as a mitigating sentencing factor that the "defendant was under 26 years of age at the time of the commission of the offense."  L. 2020, c. 110, § 1 (codified at N.J.S.A.

8

2C:44-1(b)(14)).  Upon signing the law, Governor Murphy released a statement quoting some of the sponsors of the new law, who emphasized the importance of weighing youth in the sentencing process:  "The social, emotional and mental maturity of a youthful defendant is complex and nuanced.  That very fact makes it critical for the age of a defendant to be factored by the court in criminal culpability."  Office of the Governor, Press Release:  Statement Upon Signing A. 4373 (Oct. 19, 2020).

The Legislature's recognition that "children are different" is also reflected in recent amendments to the juvenile waiver statute.  In 2015, the Legislature raised the minimum age of waiver of a juvenile to adult court from fourteen to fifteen, L. 2015, c. 89, § 1 (codified at N.J.S.A. 2A:4A-26.1(c)(1)), and heightened the role of courts in reviewing prosecutorial decisions to waive juveniles to adult court, L. 2015, c. 89, § 1 (codified at N.J.S.A. 2A:4A-26.1(c)(2)).  The sponsors' statements attached to the bills, which increased the waiver age, referred to the "new research on adolescent brain development disproving the presumption that juveniles who commit crimes think like adults."  Sponsor Statement to S. 2003 8 (Apr. 28, 2014); Sponsor Statement to A. 4299 8 (Mar. 16, 2015).

Currently, the Code of Criminal Justice takes an inconsistent approach to the use of a juvenile conviction for enhanced sentencing purposes.  The

9

Persistent Offender Statute, which authorizes a court to impose an extended-term sentence on a defendant, specifically prohibits consideration of any offense committed by that defendant when he was a juvenile. See N.J.S.A. 2C:44-3(a) (defining a persistent offender, in part, as "a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age" (emphasis added)). Thus, under the Persistent Offender Statute, a court cannot impose an extended-term sentence -- a sentence increased from the second-degree range to the first-degree range -- based on a juvenile offense; yet, under the Three Strikes Law, the court can impose a mandatory life sentence for a youthful offense.

The Three Strikes Law is one expression of legislative policy seemingly at odds with other policies within the overall scheme of the Code of Criminal Justice. Those inconsistencies do not alone render the Three Strikes Law infirm. But the new legislative enactments reflect evolving contemporary standards that bear on the constitutional issue before us.

In assessing contemporary standards, we may look to the law of other states. Several jurisdictions that have a Three Strikes Law similar to New Jersey's bar the use of a youthful offense as a predicate for imposing a

10

mandatory life term on a defendant.  See, e.g., N.M. Stat. Ann. § 31-18-23(C); Wyo. Stat. Ann. § 6-10-201(b)(ii); 730 Ill. Comp. Stat. 5/5-4.5-95(a)(4)(E).

B.

Additionally, Ryan's mandatory term of life imprisonment, based on a predicate juvenile conviction, and imposed at the age of twenty-three, is a grossly disproportionate punishment in light of our approach in Comer.  A youthful offender, just shy of his eighteenth birthday, who commits an egregious murder will have the opportunity for a review of his thirty-year sentence without parole eligibility after twenty years.  See Comer, ___ N.J. at ___ (slip op. at 51).  That is so because the incapacities attributed to youth, such as lack of maturity, impulsiveness, and reckless risk-taking without regard to consequences, tend to lessen moral culpability.  Id. at ___ (slip op. at 45).  Our constitutional jurisprudence strongly indicates that a juvenile conviction should not be afforded the same weight as an adult conviction and should not be the basis in a recidivist statute for meting out the harshest penalty in our criminal code -- a mandatory life term.

An apt comparison is this Court's decision in State v. Laurick, in which we placed constitutional limitations on the use of an uncounseled conviction in driving while intoxicated (DWI) cases under the relevant recidivist statute. 120 N.J. 1, 4 (1990).  In Laurick, "[w]e held that a prior uncounseled DWI

11

conviction could 'not be used to increase a defendant's loss of liberty'" for sentencing purposes upon a subsequent DWI conviction.  State v. Patel, 239 N.J. 424, 438 (2019) (quoting Laurick, 120 N.J. at 4).  The basic logic of Laurick was that the use of a prior uncounseled conviction as a predicate offense to enhance a custodial sentence was fundamentally unjust.  See Laurick, 120 N.J. at 16-17.  The same notion of injustice applies to the use of a juvenile conviction as a predicate offense for the Three Strikes Law.  The use of a juvenile conviction for that purpose renders hollow this Court's repeated refrain that "children are different."

Based on the majority's constitutional deference to the Three Strikes Law, a defendant who has two prior first-degree juvenile convictions may be sentenced to a term of life imprisonment without parole eligibility if he committed his third first-degree conviction at the age of eighteen.  But, under the Persistent Offender Statute, the same defendant could not even receive an extended term of imprisonment for the third conviction.  Such comparisons shed light on the grossly disproportionate outcomes that result from the current statutory scheme.

C.

Finally, punishing twenty-three-year-old Ryan with a sentence of life without parole eligibility -- based on a juvenile conviction -- "go[es] beyond

12

what is necessary to accomplish any legitimate penological objective." See Zuber, 227 N.J. at 438. The Three Strikes Law strips the court of all discretion to determine whether incapacitating Ryan for less than forty-seven years will serve society's desire for retribution or the need for incapacitation or deterrence. Cf. Jones, 593 U.S. at ___, 141 S. Ct. at 1311 (holding that a juvenile homicide offender may be sentenced to life without parole so long as "the sentence is not mandatory and the sentencer . . . has discretion to impose a lesser punishment"). The rigid application of the Three Strikes Law deprives the court of the opportunity of exercising its judgment to determine whether Ryan can be rehabilitated before his seventieth birthday.

As applied in this case, the Three Strikes Law is a blunt and cruel instrument -- ignoring Ryan's unique circumstances and background -- and condemns him to a lifetime behind bars, without any regard to his potential for rehabilitation and reformation and without any hope of a meaningful future.

III.

If, as this Court has professed in Comer, C.K., and Zuber, children are different, then the use of a juvenile conviction as a predicate offense to impose a term of life imprisonment without parole eligibility is cruel and unusual punishment under Article I, Paragraph 12 of the New Jersey Constitution. This Court has detailed at length the infirmities of youth in those opinions, and

13

yet the majority gives the same constitutional weight to the juvenile conviction as it does the two "adult" crimes committed when Ryan was twenty-three years old. Nor should we forget that the Legislature has decreed that when a defendant is "under 26 years of age at the time of the commission of the offense," age is a mitigating sentencing factor. See N.J.S.A. 2C:44-1(b)(14).

No court has made the discretionary determination that Ryan is totally beyond the pale of redemption and rehabilitation. The Three Strikes Law offends the Federal Constitution because it deprives the court of its discretion to fashion a sentence that does not constitute cruel and unusual punishment. Cf. Jones, 593 U.S. at ___, 141 S. Ct. at 1318 ("[D]iscretionary sentencing allows the sentencer to consider the defendant's youth, and thereby helps ensure that life-without-parole sentences are imposed only in cases where that sentence is appropriate in light of the defendant's age."). It also offends our State Constitution because Ryan is denied the lookback review provided to Comer and Zarate, both convicted of murder. See Comer, ___ N.J. at ___ (slip op. at 53).

Although the majority rejects Ryan's argument that the use of his juvenile conviction to impose a mandatory term of life imprisonment constitutes cruel and unusual punishment, the Legislature will have the final word on the subject. The Legislature too has a constitutional obligation and an

14

abiding interest to ensure that cruel and unusual punishments are not the consequence of its enactments. The Legislature has an interest in ensuring that the Code of Criminal Justice treats juvenile convictions in a consistent manner. The Legislature can amend the Three Strikes Law to account for the infirmities of youth and mitigate the inflexibility of imposing a mandatory life term based on a juvenile conviction.

Because I conclude that the mandatory term of life imprisonment imposed in this case violates the federal and state prohibitions against cruel and unusual punishment, I respectfully dissent.